**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ANNA LEGGETT and KRISTI WARRINER, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br><br>RUST-OLEUM CORPORATION,<br><br>        Defendant. | Case No. _____<br><br><br>**CLASS ACTION COMPLAINT**<br><br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Anna Leggett and Kristi Warriner ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through her attorneys, Gordon Law Offices Ltd. and Finkelstein, Blankinship, Frei-Pearson & Garber, LLP, file this Class Action Complaint ("Complaint") against Defendant, Rust-Oleum Corporation ("Defendant" or "Rust-Oleum"), and respectfully allege as follows:

## NATURE OF THE ACTION

1.      Defendant Rust-Oleum Corporation ("Rust-Oleum" or "Defendant") manufactures and sells a variety of do-it-yourself painting products, and aggressively markets them as remarkably superior, thereby meriting their price premiums. One such product is Defendant's "Painter's Touch Ultra Cover 2X Spray Paint" (the "Product"). According to Rust-Oleum, each and every color and finish of Painter's Touch Ultra Cover 2X Spray Paint was designed with "double cover technology" to provide "twice the coverage in a single pass," so that "your project will be done in half the time at half the cost of competitive brands."

Customers, who are led to believe that the product is superior to its competitors in quality and cost-efficiency, are thus willing to, and do, pay a higher price.

2.     This class action seeks to redress Defendant's past and present deceptive representations regarding their Painter's Touch Ultra Cover 2X Spray Paint. Defendant's advertisements, including the Product's name, label, packaging, website, and brochures are false, misleading, and likely to deceive the reasonable consumer. Rather than providing "twice the coverage" as its competitors, the Product performs below its express representations and fails to fulfill Rust-Oleum's affirmative promises. As a result, Plaintiffs and putative Class Members not only paid and continue to pay more than they would otherwise for comparable products that are not falsely advertised, but also have and continue to expend extra time and money to purchase additional spray paint to compensate for the Product's coverage deficiencies.

3.     While it is undeniable that the Product has been a marketing sensation and an unmitigated financial success, Defendant's success has been the result of unlawful and unfair business practices in the marketing and sale of the Product. These practices are plainly improper and unacceptable -- particularly for a company that prides itself as the "home of trusted quality."[1]

4.     Plaintiffs bring this action individually and on behalf of all similarly situated consumers for the relief requested and to promote the public interests in the provision of truthful, non-deceptive information to allow consumers to make informed purchasing decisions and to protect Plaintiffs, the Classes, and the public at large from Defendant's unfair, unethical, deceptive, fraudulent, unconscionable, and unlawful business practices.

5.     Plaintiffs, individually and on behalf of all similarly situated consumers, seek to compel Defendant to immediately discontinue its unlawful conduct and to provide compensation to all of those affected as a result of Defendant's blatantly deceptive practices. As alleged in

---

[1] *Our History*, RUST-OLEUM, http://www.rustoleum.com/about-rust-oleum/our-history (last visited Jan. 24, 2017).

detail, Defendant's conduct constitutes breach of express warranty (ORE. REV. STAT. ANN. § 72.3130 *et seq*. and WISC. STAT. § 404.313), unjust enrichment, violates Oregon's Unlawful Trade Practices Act (ORE. REV. STAT. ANN. § 646.605 *et seq*.), Wisconsin's Deceptive Trade Practices Act (WIS. STAT. § 100.18), and Wisconsin's Unfair Trade Practices Act (WIS. STAT. § 110.20).

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over Plaintiffs' claims under the Class Action Fairness Act, 28 U.S.C. § 1332(d) in that: (1) this is a class action involving more than 100 class members; (2) at least one Class Member is a citizen of a state that is diverse from Defendant's citizenship; and (3) the aggregate amount in controversy exceeds the sum of $5,000,000, exclusive of interest and costs.

7.      This Court has personal jurisdiction over Defendant because Defendant maintains its principal headquarters in Vernon Hills, Illinois; has sufficient minimum contacts with Illinois; or otherwise intentionally avails itself of the markets within Illinois through the promotion, sale, marketing, and distribution of its products such that the exercise of jurisdiction by this Court is proper and necessary.  Moreover, Rust-Oleum's wrongful conduct emanates from its corporate headquarters in Illinois.

8.      Venue is proper in this District pursuant to: (1) 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to the claims occurred in Illinois; and (2) 28 U.S.C. § 1391(b)(3) in that Defendant is subject to personal jurisdiction in this District.

## PARTIES

9.      Plaintiff Anna Leggett is a citizen and resident of  Gresham, Oregon.  Plaintiff Leggett purchased the Product at Fred Meyer located at 2497 SE Burnside Road in Gresham,

Oregon.  Plaintiff Leggett made this purchase in reliance on the representations on the Product's name, label, packaging, website, and brochures that the product was "2X double the square foot coverage of other competitive brands," and "Made with Double Cover Technology."  Plaintiff Leggett would not have purchased, and/or would not have paid a price premium for, the Product had she known that the Product did not actually provide double coverage.

10.     Plaintiff Kristi Warriner is a citizen and resident of  Middleton, Wisconsin. Plaintiff Warriner purchased the Product at several locations during the class period, including at Ace Hardware located at 2540 Allen Boulevard in Middleton, Wisconsin and the Home Depot located at 4550 Verona Road in Madison, Wisconsin.  Plaintiff Warriner made these purchases in reliance on the representations on the Product's name, label, packaging, website, and brochures that the product was "2X double the square foot coverage of other competitive brands," and "Made with Double Cover Technology."  Plaintiff Warriner would not have purchased, and/or would not have paid a price premium for, the Product had she known that the Product did not actually provide double coverage.

11.     Defendant Rust-Oleum Corporation is an Illinois corporation, with its corporate headquarters located in Vernon Hills, Illinois.  Rust-Oleum is a global manufacturer, distributor, and seller of "premium" paints and coatings products for both home and industry use.  Rust-Oleum is a subsidiary of RPM International, Inc. ("RPM"), and has been since the formerly-family-owned company was purchased in 1994.  As of 2014, Rust-Oleum's sales had risen nearly ninefold since the company's sale to RPM, generating $1.2 billion in annual sales.[2]

---

[2] Alejandra Cancino, Rust-*Oleum's perks sparkle among top workplaces*, CHICAGO TRIBUNE (Nov. 14, 2014), http://www.chicagotribune.com/business/ct-twp-medium-rust-oleum-1114-biz-20141114-story.html.

## **FACTUAL ALLEGATIONS**

**Do-It-Yourself Home Improvement Is A Highly
Profitable Industry With Highly Reliant Customers**

12.     Rust-Oleum manufactures, markets, warrants, and sells paints and coatings for residential and industrial purposes.  The company prides itself as the "home of trusted quality . . . since 1921."[3]

13.     U.S. households spent approximately $319 billion on home improvement products in 2015, and are estimated to have increased such spending by 4.7% in 2016.[4]

14.     Do-it-yourself consumers reasonably rely on manufacturers to provide accurate information regarding their products, including representations made on labels.

15.     Product packaging is a significant vehicle through which manufacturers of do-it-yourself products communicate material that they believe, and reasonably expect, to be important to consumers making purchasing decisions.

16.     Rust-Oleum is best known for its do-it-yourself products for the individual consumer home improvement market.  Knowing its consumer base, Rust-Oleum emphasizes the easy application of its products and often features "How to Apply" videos on its website and on YouTube.[5]

---

[3] RUST-OLEUM, *supra* note 1.
[4] Matthew Craig, *Expecting 4.7% Home Improvement Sales Growth in 2016*, HOME IMPROVEMENT RESEARCH INSTITUTE (Mar. 2, 2016), https://www.hiri.org/news/277907/Expecting-4.7-home-improvement-sales-growth-in-2016.htm.

[5] How-To Videos, RUST-OLEUM, http://www.rustoleum.com/pages/homeowner/how-to-videos/.

**The Marketing Scheme**

17.    Throughout the relevant period, Defendant made numerous misrepresentations to consumers about the Product's purported qualities and use in the Product's name, and on its labels and packaging, including, but not limited to, the following:

a.    The Product's name, wherein "2X" is directly followed or preceded by "Ultra Cover;"

b.    A gold seal with the text "DOUBLE COVER" overlaid;

c.    A very prominent "2X" featured beside the gold seal;

d.    "Made with double cover technology"; and

e.    Photo depiction of "one can = two cans" adjacent to "COVERAGE."

18.    Examples of the Product's labels and packaging appear below:





19.     Reasonable consumers understand from the Product's labels that the paint provides double coverage and is thus superior to other painting products.

20.     Defendant reinforces this deception.  Defendant's marketing beyond the Product's name, label, and packaging similarly emphasize the Product's purported superiority.  Defendant's website, brochure, and additional promotional materials feature similar misrepresentations, including, but not limited to:

a.     "The breakthrough technology of Painter's Touch Ultra Cover 2X means you'll get twice the coverage in a single pass -- which means your project will be done in half the time at half the cost of competitive brands";

b.     A YouTube commercial, which included written phrases such as "be twice as beautiful," "be twice as colorful," and "get twice the coverage"; and

c.     A brochure depicting nearly perfect coverage provided by the Product, juxtaposed with insufficient coverage provided by "Brand K".

21.     An example of the Product's description on Rust-Oleum's website appears below:



22.     All of these statements convey a message that the Product is in fact superior because it provides twice the coverage versus other available brands.

**The Product Does Not Perform As Marketed By Defendant**

23.     Contrary to Defendant's express representations, the Product did not provide the coverage, time efficiency, or cost savings they were marketed.

24.     In early 2016, the National Advertising Division ("NAD"), the investigative unit of the Council of Better Business Bureaus charged with monitoring truthfulness and accuracy in advertising, released its recommendations that Rust-Oleum discontinue its claims that expressly state or suggest that its Painter's Touch Ultra Cover 2X Spray Paint provides twice as much coverage as competing spray paints.  NAD also recommended that Defendant change the name of the Product.[6]  NAD's recommendations arose out of its review of Rust-Oleum's claims as they appeared on product packaging, in broadcast, print, and website advertising, and in a YouTube video.

25.     Upon review of the Product's packaging, labeling, marketing, and advertisements, NAD concluded that Rust-Oleum reasonably conveyed to consumers that the Product provides double the coverage of competing brands, including its competitor Krylon.  NAD further determined that the product name constitutes an express performance claim because "2X" is followed directly by the claim "Cover."

26.     NAD then conducted an assessment of Rust-Oleum's product testing to determine the legitimacy of its claims.

---

[6] NATIONAL ADVERTISING DIVISION, NAD RECOMMENDS RUST-OLEUM DISCONTINUE '2X' COVERAGE CLAIMS FOR 'PAINTER'S TOUCH ULTRA COVER 2X SPRAY PAINT,' CHANGE PRODUCT NAME; COMPANY TO APPEAL (2006).

27.     NAD refuted the relevancy of Rust-Oleum's in-house testing in 2008 and its independent testing in 2009 because the products used were no longer available in the marketplace.

28.     NAD instead examined on Rust-Oleum's in-house comparative testing conducted in 2014 and 2015 on Krylon CoverMaxx and ColorMaster spray paints, respectively.

29.     NAD concluded that none of the testing Defendant conducted supported the double coverage claim.  Primarily, Rust-Oleum did not implement sufficient controls to prevent the biases associated with in-house testing -- as opposed to independent testing.  One possible method of reducing biases is conducting blind or double-blind studies.  Second, NAD found that it was unclear whether Krylon's use instructions were properly followed.  Krylon's instructions state that the spray should be applied from six to eight inches away from the surface.  If sprayed at a further distance, the coverage would dissipate.  Third, NAD cautioned that any inherent or potential bias or deviation from the Product's application instructions, e.g., spraying the Product from a closer distance than instructed, could materially impact the test results.

30.     NAD determined that, because of the impactful 2X claims and imagery on each and every color and finish of the Product, consumers will reasonably expect that the double coverage claims are consistently true, not simply that there is a possibility that the Product may provide twice the coverage, as the studies found.

31.     With respect to Rust-Oleum's claim that "2X's formulation contains more solids and premium pigments," NAD determined that Rust-Oleum failed to provide any evidence as to the amount of pigments and solids in the Product, and as a result, NAD could not verify the claim.

32.     Despite the lack of meaningful testing, statistical analysis, and accuracy, Rust-Oleum chose to market the Product with a prominent, specific, quantified, express performance claim.

33.     As a consequence of its investigation, NAD recommended that Rust-Oleum discontinue its marketing grounded in its unsubstantiated performance claims, namely the 2X coverage claims, imagery, and name.  NAD further recommended that the visuals depicting the Product's flawless coverage next to Krylon's insufficient coverage, as well as claims that the Product's formulation contains more solids and pigments, be discontinued.

34.     Rust-Oleum subsequently appealed NAD's recommendation that it discontinue its use of "2X" as a part of the Product's name.  The National Advertising Review Board ("NARB") agreed with NAD, determining that the product name was, in fact, an express performance claim that the Product delivers twice the coverage of competing brands.  The panel agreed that both the Product's original name – Painter's Touch Ultra Cover 2X -- and current name -- Painter's Touch 2x Ultra Cover -- reasonably conveyed that the Product provides double coverage.

35.     Despite these findings, Defendant continues to label, market, and advertise its Product as providing double coverage.

36.     Therefore, Defendant knows that these representations are false, and its labeling and marketing representations are deceptive and misleading to reasonable consumers.

37.     Accordingly, Defendant has engaged in a widespread marketing campaign to mislead consumers about the nature and quality of the Product during the applicable statute of limitations period (the "Class Period") in violation of the Oregon and Wisconsin consumer protection statutes, and the common law.

## CLASS ACTION ALLEGATIONS

38.     Pursuant to Federal Rules of Civil Procedure 23(b)(2) and (b)(3), Plaintiffs bring this case as a class action on behalf of classes of individuals in the United States, and in Oregon and Wisconsin, defined as follows:

> Nationwide Class:
>
> All persons in the United States who purchased the Product for their personal use and not for resale during the Class Period.
>
> Oregon Sub-Class:
>
> All persons in the State of Oregon who purchased the Product for their personal use and not for resale during the Class Period.
>
> Wisconsin Sub-Class:
>
> All persons in the State of Wisconsin who purchased the Product for their personal use and not for resale during the Class Period.

39.     Excluded from the above Classes are Defendant, any entity in which Defendant has a controlling interest or that has a controlling interest in Defendant, and Defendant's legal representatives, assignees, and successors.  Also excluded are the Judges to whom this case is assigned and any member of the Judge's immediate family.

40.     The Classes are each so numerous that joinder of all members is impracticable.

41.     The rights of Plaintiffs, and each Class Member, were violated in precisely the same manner by Defendant's misleading and deceptive labeling, marketing, and advertising.

42.     There are numerous questions of law and fact common to Plaintiffs and Class Members.  These common questions of law and fact include, but are not limited to, the following:

a.     whether Defendant's labeling, advertising or marketing of the Products is false and misleading;

b.     whether Defendant marketed the Product as a superior product;

c.     whether a reasonable consumer would understand and believe from Defendant's deceptive representations that the Product always provides twice as much coverage as its competitors' spray paints;

d.     whether a reasonable consumer would understand and believe from Defendant's deceptive representations that the Product provides twice as much coverage in half the time at half the cost of competitive brands;

e.     whether Defendant's Product commands a premium price caused by these deceptions;

f.     whether Defendant's misrepresentations were material to reasonable consumers;

g.     whether Defendant's labeling, marketing, and sale of the Product constitutes deceptive conduct;

h.     whether Defendant's conduct described above constitutes negligent misrepresentation;

i.     whether Defendant's conduct described above constitutes breach of express warranty;

j.     whether Defendant was unjustly enriched due to its iniquitous conduct;

k.     whether Defendant's conduct injured consumers and, if so, the extent of the injury;

l.     the appropriate remedies for Defendant's conduct; and

m.  whether, as a result of Defendant's misconduct as alleged herein, Plaintiffs and Class Members are entitled to restitution and injunctive relief.

43.  Plaintiffs' claims are typical of the claims of the Classes. Plaintiffs suffered the same injury as Class Members -- i.e., Plaintiffs purchased the Product after seeing Defendant's misleading representations about the quality, benefits, characteristics, and nature of the Product and paid more money than they otherwise would have for the actual Product they received.

44.  Plaintiffs will fairly and adequately protect the interests of the Classes. Plaintiffs have retained competent and capable attorneys with significant experience in complex and class action litigation, including consumer class actions. Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Classes and have the financial resources to do so. Neither Plaintiffs nor their counsel has interests that are contrary to or that conflict with those of the proposed Classes.

45.  Defendant has engaged in a common course of conduct toward Plaintiffs and Class Members. The common issues arising from this conduct that affect Plaintiffs and Class Members predominate over any individual issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

46.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy because Class Members number in the thousands, and individual joinder is impracticable. The expense and burden of individual litigation would make it impracticable or impossible for proposed Class Members to prosecute their claims individually. Trial of Plaintiffs' and the Class Members' claims is manageable. Unless the Classes are certified, Defendant will remain free to continue to engage in the wrongful conduct alleged herein without consequence.

47.     Certification of the Classes, therefore, is appropriate under FED. R. CIV. P. 23(b)(3), because the above common questions of law or fact predominate over any questions affecting individual Class Members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

48.     Certification of the Classes also is appropriate under FED. R. CIV. P. 23(b)(2), because Defendant has acted, or refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or equitable relief with respect to the Class as a whole.

49.     Certification of the Classes also is appropriate under FED. R. CIV. P. 23(b)(1), because the prosecution of separate actions by individual Class Members would create a risk of establishing incompatible standards of conduct for Defendant.

50.     Defendant's wrongful actions, inaction, and omissions are generally applicable to the Classes as a whole and, therefore, Plaintiffs also seek equitable remedies for the Classes.

51.     Defendant's systemic policies and practices also make injunctive relief for the Classes appropriate.

52.     Absent a class action, Defendant will retain the benefits of its wrongdoing despite its serious violations of the law and infliction of economic damages, injury, and harm on Plaintiffs and the Class Members.

## FIRST CAUSE OF ACTION
### Breach of Express Warranty
**(Nationwide Class or, in the Alternative, the Oregon and Wisconsin Sub-Classes)**

53.     Plaintiffs Leggett and Warriner re-allege and incorporate by reference all preceding factual allegations.

54. Plaintiffs Leggett and Warriner bring this claim individually and on behalf of members of the Classes.

55. Plaintiffs and Class Members formed a contract with Defendant at the time each individual purchased the Product. The terms of that contract include the promises and affirmations of fact made by Defendant on the packaging for the Product and through marketing and advertising, as described above.

56. These representations, marketing and advertising became part of the basis of the bargain between Plaintiffs and Defendant, and between Class Members and Defendant.

57. Defendant made several express warranties and representations constituting warranties regarding the Product, including, but not limited to, to following warranties:

   a. "Ultra Cover 2X" or "2X Ultra Cover," appearing as a part of the name;

   b. A gold seal with the text "DOUBLE COVER" (label);

   c. That the Product was "Made with Double Cover Technology" (label and online);

   d. "The breakthrough technology of Painter's Touch Ultra Cover 2x means that you'll get twice the coverage in a single pass -- which means your project will be done in half the time at half the cost of competitive brands." (online);

   e. A photo of the Product and two other paint cans to illustrate the claim that the coverage provided by one can of Defendant's Product is equivalent to two cans of competitors' products (label);

   f. A YouTube commercial included the onscreen phrases "be twice as beautiful," be twice as colorful," and "get twice the coverage" (online);

g.   A depiction of the nearly flawless coverage provided by one or two passes of the

Product, compared to insufficient coverage provided by "Brand K" after one or two

passes (brochure).

58.    Defendant made the above-described representations to induce Plaintiffs and

Class Members to purchase the Product, and Plaintiffs and Class Members relied on the

representations in purchasing the Product.

59.    The representations, promises, descriptions, and models became part of the basis

of the bargain between the parties and created a collective "express warranty" that the Product

would conform to Defendant's affirmative representations, promises, descriptions, and models.

60.    All conditions precedent to Defendant's liability has been performed by Plaintiffs

and Class Members, who paid the asking price for the Product in question.

61.    Defendant breached the express warranty by providing the Product in a condition

that did not confirm to the affirmations, promises, descriptions, or models.

62.    Defendant's breach resulted in damages to Plaintiffs and Class Members, who

brought the Product but did not receive the goods as expressly warranted.

63.    Defendant's conduct described in this complaint constitutes a breach of express

warranty under UCC § 2-313, as adopted by state statute in Oregon and Wisconsin.  ORE. REV.

STAT. ANN. § 72.3130 *et seq.*; WISC. STAT. § 404.313.

64.    As a direct and proximate result of Defendant's breach of express warranty,

Plaintiffs and Class Members suffered damages, injury in fact, and/or ascertainable loss in the

amount of the purchase price they paid for the Product, and the time and cost expended to

compensate for the Product's deficiencies.  Furthermore, Plaintiffs and Class Members were

deprived of the benefit of their bargain and spent money on the Product that did not have any

value or had less value than warranted. Alternatively, Plaintiffs and Class Members would not have purchased the Product had they known the true facts about it.

65.     THEREFORE, Plaintiffs pray for relief as set forth below.

## SECOND CAUSE OF ACTION
### Unjust Enrichment
**(Nationwide Class or, in the Alternative, the Oregon and Wisconsin Sub-Classes)**

66.     Plaintiffs Leggett and Warriner re-allege and incorporate by reference all preceding factual allegations.

67.     Plaintiffs Leggett and Warriner bring this claim individually and on behalf of members of the Classes.

68.     Plaintiffs Leggett and Warriner and members of the Classes conferred a benefit on Defendant by purchasing the Product.

69.     As set forth above, Defendant engaged in deceptive conduct because of its wrongful acts and omissions regarding the nature and quality of its Product through the Product's marketing, labeling and advertising.

70.     Defendant charged a higher price for the Product than the Product's true value and Defendant obtained monies that rightfully belong to Plaintiffs Leggett and Warriner and members of the Classes.

71.     As a result of Defendant's deceptive, fraudulent, and misleading, labeling, marketing, and advertising and sales of their Products, Defendant was enriched at the expense of Plaintiffs Leggett and Warriner and members of the Classes, through they payment of the purchase price for Defendant's Product.

72.     Defendant enjoyed the benefit of increased financial gains to the detriment of Plaintiffs and Class Members.

73.     Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits that they received from Plaintiffs Leggett and Warriner and members of the Classes in light of the fact that the Product purchased by Plaintiffs Leggett and Warriner and the Class members was not what Defendant purported it to be. Thus, it would be unjust or inequitable for Defendant to retain the benefit without restitution to Plaintiffs Leggett and Warriner and members of the Classes for the monies paid to Defendant for the Products.

74.     THEREFORE, Plaintiffs pray for relief as set forth below.

**THIRD CAUSE OF ACTION**
**Violations of Oregon's Unlawful Trade Practices Act**
**(ORE. REV. STAT. ANN. § 646.605 *et seq*.)**
**(On Behalf of the Oregon Sub-Class)**

75.     Plaintiff Leggett re-alleges and incorporates by reference all preceding factual allegations.

76.     Plaintiff Leggett brings this action individually and on behalf of all similarly situated consumers under Oregon's Unlawful Trade Practices Act, ORE. REV. STAT. ANN. § 646.605 *et seq*., for the relief requested and to promote the public interests in the provision of truthful, non-deceptive information to allow consumers to make informed purchasing decisions and to protect Plaintiff Leggett, the Oregon Sub-Class, and the public at large from Defendant's unfair, unethical, deceptive, fraudulent, unconscionable, and unlawful business practices.

77.     ORE. REV. STAT. ANN. § 646.607(1) articulates that "a person," which includes corporations as defined in ORE. REV. STAT. ANN. § 646.605(4), "engages in an unlawful trade practice if in the course of the person's business . . . the person: (1) Employs any unconscionable tactic in connection with selling . . . goods."  The statute defines "unconscionable tactics" as actions by which a corporation "[k]nowingly takes advantage of a customer's . . . ignorance."

ORE. REV. STAT. ANN. § 646.605(9). Over the course of the Class period, Defendant continuously and knowingly employed misrepresentative and false statements to promote the sale of the Product. Defendant's actions are particularly unconscionable in that Defendant is aware that the market for do-it-yourself products, such as the Product in the instant case, is comprised of consumers who rely upon manufacturers' representations to make their purchasing decisions. The marketing tactics used took advantage of consumers exemplify the unconscionable tactics the Oregon statute seeks to preclude.

78. ORE. REV. STAT. ANN. § 646.608(1)(e) prohibits misrepresenting the "sponsorship, approval, characteristics, ingredients, uses, benefits, quantities or qualities" of goods. Defendant violated this subsection by repeatedly, expressly, and falsely representing that the quality of the Product is superior to that of its competitor spray paints, and that the benefits, uses, and characteristics include twice the coverage as competitors, in half the time and at half the cost. Defendant also falsely advertised that its ingredients, or formula, were such that the Product contained more solids and premium pigments.

79. ORE. REV. STAT. ANN. § 646.608(1)(g) bans misrepresenting the "particular standard, quality, or grade" of goods. Defendant violated this provision by advertising, promoting, and selling the Product under the guise that it provides double coverage, thereby cutting time and costs in half. Defendant's claims set forth a particular standard and quality that the Product fails to comply with.

80. ORE. REV. STAT. ANN. § 646.608(1)(u) proscribes engaging "in any unfair or deceptive conduct in trade or commerce." By not only failing to disclose material facts, but also actively and knowingly disseminating false information regarding the quality, characteristics,

benefits, and uses of the Product in the marketing, advertising, and sale of the Product, Defendant engaged in unfair and deceptive business practices.

81.     As a direct and proximate result of Defendant's unfair, unethical, deceptive, fraudulent, unconscionable, and/or unlawful tactics, Plaintiff Leggett and the Oregon Sub-Class Members have suffered ascertainable losses and injuries in the amount to be proven at trial.

**FOURTH CAUSE OF ACTION**
**Violation of the Wisconsin Deceptive Trade Practices Act**
**(WIS. STAT. § 110.18)**
**(On Behalf of the Wisconsin Sub-Class)**

82.     Plaintiff Warriner incorporates by reference each preceding paragraph as though fully set forth herein.

83.     Plaintiff Warriner bring this action on behalf of herself and the Wisconsin Sub-Class under Wis. Stat. § 110.18.

84.     Plaintiff Warriner is a member of "the public" within the meaning of the Wisconsin Deceptive Trade Practices Act ("Wisconsin DTPA"), WIS. STAT. § 100.18(1). Plaintiff Warriner purchased one or more of Defendant's paint products as described herein.

85.     Defendant is a "person, firm, corporation or association" within the meaning of the Wisconsin DTPA, WIS. STAT. § 100.18(1).

86.     The Wisconsin DTPA prohibits an "advertisement, announcement, statement or representation of any kind to the public," that contains "any assertion, representation or statement of fact which is untrue, deceptive or misleading." WIS. STAT. § 100.18(1).

87.     Defendant has violated the Wisconsin DTPA by engaging in the untrue, deceptive, and misleading practices described herein, which are unconscionable and which offend public policy and which are immoral, unethical, unscrupulous and substantially injurious to consumers.

88.     Specifically, Defendant has violated the Wisconsin DTPA in at least the following ways:

a.  Over the course of the Class Period, Defendant continuously and knowingly represented that the Product was superior to that of competitor spray paints, and that the benefits, uses, and characteristics include twice the coverage as competitors, in half the time and at half the cost.  Defendant also falsely advertised that its ingredients, or formula, were such that the Product contained more solids and premium pigments.

b.  Defendant employed misrepresentative and false statements including advertisements, the Product's name, labeling, and packaging to promote the sale of the Product.  Defendant represented the superior nature and quality of the Product. Defendant thus violated the Statute by, at minimum employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Defendant's Product;

c.  Falsely represented that the Product was of superior quality to competitor products regarding the quality, characteristics, benefits, and uses of the Product in the marketing, advertising, and sale of the Product;

d.  Misleading consumers such as Plaintiff Warriner and Wisconsin Sub-Class Members into believing that Defendant's Product was superior to other similar paint products.

89.     By not only failing to disclose material facts, but also actively and knowingly disseminating false information regarding the quality, characteristics, benefits, and uses of the Product in the marketing, advertising, and sale of the Product, Defendant engaged in unfair and deceptive business practices.

90.     Defendant took advantage of the lack of knowledge, ability, experience, or capacity of Class members to a grossly unfair degree, and those actions resulted in a gross disparity between the value received by Class members and the price paid for Defendant's Product.

91.     Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff Warriner and Wisconsin Sub-Class Members, into believing that Defendant's Product was superior to that of its competitor spray paints, and that the benefits, uses, and characteristics include twice the coverage as competitors, in half the time and at half the cost.

92.     Plaintiff Warriner and the Wisconsin Sub-Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's misrepresentations and their concealment of and failure to disclose material information.   Plaintiff Warriner and the Wisconsin Sub-Class members who purchased Defendant's Product would have not purchased the Product, or alternatively, would have paid less for it.

93.     Plaintiff Warriner and Wisconsin Sub-Class Members risk irreparable injury as a result of Defendant's acts and omissions in violation of the Wisconsin DTPA, and these violations present a continuing risk to Plaintiff Warriner, the Wisconsin Sub-Class, as well as to the general public.   Defendant's unlawful acts and practices complained of herein affect the public interest.

94.     As a direct and proximate result of Defendant's violations of the Wisconsin DTPA, Plaintiff Warriner and the Wisconsin Sub-Class have suffered injury-in-fact and actual damage.

95.     Plaintiff Warriner and the Wisconsin Sub-Class are entitled to recover damages, attorneys' fees, and other relief under WIS. STAT. § 100.18(11)(b)(2).

96.     Plaintiff Warriner also seeks an order enjoining Defendant's unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under the Wisconsin DTPA.


**FIFTH CAUSE OF ACTION**
**Violation of the Wisconsin Unfair Trade Practices Act**
**(WIS. STAT. § 110.20)**
**(On Behalf of the Wisconsin Sub-Class)**

97.     Plaintiff Warriner incorporates by reference each preceding paragraph as though fully set forth herein.

98.     Plaintiff Warriner brings this Count on behalf of herself and the Wisconsin Sub-Class against Defendant.

99.     The Wisconsin Unfair Trade Practices Act ("UTPA") prohibits "[u]nfair methods of competition in business and unfair trade practices in business." WIS. STAT. § 100.20(1).

100.     The Wisconsin UTPA provides that "The [Wisconsin Department of Agriculture, Trade and Consumer Protection ("ATCP")], after public hearing, may issue general orders forbidding methods of competition in business or trade practices in business which are determined by the department to be unfair. The department, after public hearing, may issue general orders prescribing methods of competition in business or trade practices in business which are determined by the department to be fair." WIS. STAT. § 100.20(2)(a).

101.    The ATCP has issued a general order that prohibits, prohibits "false, deceptive or misleading" declarations of identity on the package of consumer commodities. Wis. Admin. Code, § ATCP 90.02.

102.    Defendant's Painter's Touch Ultra Cover 2X Spray Paint products are "consumer commodities" for purposes of Wis. Admin. Code, § ATCP 90.02.

103.    Defendant participated in false, deceptive, or misleading acts that violated the Wis. Admin. Code, § ATCP 90.02, and thereby violated the Wisconsin UTPA.

104.    Specifically, Defendant has violated the Wisconsin UTPA in at least the following ways:

a.      Representing that the Product was superior to that of its competitor spray paints, and that the benefits, uses, and characteristics include twice the coverage as competitors, in half the time and at half the cost.   Defendant also falsely advertised that its ingredients, or formula, were such that the Product contained more solids and premium pigments;

b.      Defendant employed misrepresentative and false statements including in advertisements, the Product's name, labeling, and packaging to promote the sale of the Product. Defendant represented the superior nature and quality of the Product. Defendant thus violated the Statute by, at minimum employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Defendant's Product;

      c.      Falsely represented that the Product was of superior quality to competitors' products regarding the quality, characteristics, benefits, and uses of the Product in the marketing, advertising, and sale of the Product;

      d.      Misleading consumers such as Plaintiff Warriner and Wisconsin Sub-Class Members into believing that Defendant's Product was superior to other similar paint products;

      e.      Taking advantage of the lack of knowledge, ability, experience or capacity of Class members to a grossly unfair degree, and those actions resulted in a gross disparity between the value received by Class Members and the price paid for Product.

105.    Defendant thus violated the WIS. ADMIN. CODE, § ATCP 90.02, by making "false, deceptive or misleading" declarations of identity on the packaging of their products, and thereby violated the Wisconsin UTPA by engaging in "[u]nfair methods of competition in business and unfair trade practices in business." WIS. STAT. § 100.20.

106.    Defendant intended for Plaintiff Warriner and the Wisconsin Sub-Class to rely on its aforementioned unfair and deceptive acts and practices, including the misrepresentations and omissions alleged above.

107.    Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff Warriner and Wisconsin Sub-Class Members, into believing that the Products were somehow superior to that of its competitor spray paints, and that the benefits, uses, and characteristics include twice the coverage as competitors, in half the time and at half the cost. Defendant also falsely advertised that its ingredients, or formula, were such that the Product contained more solids and premium pigments.

108.    Plaintiff Warriner and the Wisconsin Sub-Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's misrepresentations and their concealment of and failure to disclose material information.    Plaintiff Warriner and the Wisconsin Sub-Class Members who purchased the Product would not have purchased the Product, or alternatively, would have paid less for it.

109.    Plaintiff Warriner and Wisconsin Sub-Class members risk irreparable injury as a result of Defendant's acts and omissions in violation of the Wisconsin UTPA, and these violations present a continuing risk to Plaintiffs, the Sub-Class, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

110.    As a direct and proximate result of Defendant's violations of the Wisconsin UTPA, Plaintiff Warriner and the Wisconsin Sub-Class have suffered pecuniary loss.

111.    Plaintiff Warriner and the Wisconsin Sub-Class are entitled to damages and other relief provided for under WIS. STAT. § 100.20(5), including twice the amount of their pecuniary loss along with costs.

112.    Plaintiff Warriner and the Wisconsin Sub-Class also seek court costs, attorneys' fees, and any other just and proper relief available under the Wisconsin UTPA, WIS. STAT. § 110.20(5).

## **PRAYER FOR RELIEF**

113.    WHEREFORE, Plaintiffs, on their own behalf and on behalf of Class Members, prays for judgment against Defendant as follows:

        a.    Certification of the proposed Classes;

        b.    Appointment of Plaintiffs as representatives of the Classes;

c.    Appointment of Plaintiff Leggett as representative of the Oregon Sub-Class;

d.    Appointment of Plaintiff Warriner as representative of the Wisconsin Sub-Class;

e.    Appointment of the undersigned counsel as counsel for the Classes;

f.    An order enjoining Defendant and/or its affiliates, agents, and/or other related entities, as provided by law, from engaging in the unlawful conduct set forth herein;

g.    An order requiring Defendant to notify each and every individual and/or business who purchased the Product of the pendency of the claims in this action in order to give such individuals and businesses an opportunity to obtain restitution from Defendant;

h.    An order compelling Defendant to engage in a corrective advertising campaign to inform the public concerning the true nature of the Product, including a recall of the falsely and deceptively labeled Product;

i.    An order requiring Defendant to disgorge and make restitution of all monies Defendant acquired by means of the unlawful practices set forth herein;

j.    An award to Plaintiffs and the Classes of damages, including interest, as allowed by law;

k.  An award to Plaintiffs and the Classes of attorneys' fees and costs, as allowed by law and/or equity;

l.  Leave to amend this Complaint to conform to the evidence presented at trial; and

m.  Orders granting such other and further relief as the Court deems necessary, just, and proper.

## DEMAND FOR JURY

114.  Plaintiffs demand a trial by jury for all issues so triable.

Respectfully submitted,

Dated:  February 24, 2017             GORDON LAW OFFICES, LTD.


By:     */s/    Richard R. Gordon*
        Richard R. Gordon
        rrg@gordonlawchicago.com
        211 W. Wacker Drive
        Suite 500
        Chicago, IL 60606
        Tel: (312) 332-5200
        Fax: (312) 236-7727
        *Local Counsel for Plaintiffs and the Putative Class*

        **FINKELSTEIN, BLANKINSHIP, FREI-PEARSON & GARBER, LLP**

By:     */s/ Todd Garber*

        Todd S. Garber (Pro Hac Vice Application forthcoming)
        *tgarber@fbfglaw.com*
        D. Greg Blankinship
        *gblankinship@fbfglaw.com*
        445 Hamilton Avenue, Suite 605
        White Plains, New York 10601
        Tel: (914) 298-3283
        Fax: (914) 824-1561

*Co-Lead Counsel for Plaintiffs*
*and the Putative Class*

Samuel J. Strauss (Pro Hac Vice Application
Forthcoming)
*sam@turkestrauss.com*
TURKE & STRAUSS LLP
613 Williamson Street, Suite 209
Madison, WI 53705
Tel: (608) 237-1775